TERRY and others, *appellants, vs.* DAYTON and others, *respondents.*

31b    519
75 AD³629

A party to the record in proceedings before a surrogate upon the final accounting of an administrator, is not a competent witness.

Neither the act of Dec. 14, 1847, authorizing parties in civil suits to obtain the testimony of the adverse party, nor the 399th section of the code, authorizing parties to be examined on their own behalf, has any reference to proceedings before a surrogate.

It is erroneous for a surrogate to allow an administrator's account or claim against the estate, whatever may be the force of the proof to establish it in the first instance, unless it is accompanied by the affidavit of the administrator stating that such claim is justly due, and that no payments have been made thereon, and that there are no offsets against the same, to the knowledge of the claimant.

Where it appears, on the final accounting of an administrator before a surrogate, that the deceased had in his lifetime made advancements to certain of his children, in money, and that the deceased left real estate, which descended to his heirs; *Held* that the advancements, being in money, were properly chargeable in preference on the personal estate, and should be taken into the account by the surrogate, in the distribution of the estate.

The rule required by equity, and that intended by the statutes, is that advancements made by real estate shall go first against the real estate descended, and be charged upon the shares of heirs and against those who represent those shares; while, on the other hand, advancements made in personal estate or money shall be first accounted for in the distribution of the personalty, and be charged upon the next of kin as such, and upon the shares which they represent.

APPEAL from a sentence or decree of the surrogate of the county of Suffolk, made upon the final accounting of Eleazer Z. P. Dayton, administrator of, &c. of Eleazer Dayton, deceased.

*Wm. Wyckham*, for the appellants.

*George Miller*, for the respondents.

BROWN, J.  Clark Hulse, the husband of Mary E. Hulse, and one of the contestants in this proceeding, was not a competent witness, and was properly rejected by the surro-

gate. Neither the act of the 14th Dec. 1847, to which the counsel for the appellants refers, nor the code of procedure, has any reference to proceedings before the surrogate. He was a party to the record, and that was enough to exclude him. (*Willcox* v. *Smith*, 26 *Barb.* 317.)

The principal question presented by this appeal relates to the account for $1274.75 claimed by Eleazer Z. P. Dayton, the administrator, to have been due to him from the intestate at the time of his death, and allowed by the surrogate's decree. This account consisted of 27 items, several of them items of interest, and extended from June, 1852, to May, 1856. The parties to the account were father and son, living together in the same house, and there were no credits. This account was objected to by the appellants, (who are some of the next of kin,) upon the final accounting before the surrogate. It was not sworn to or verified by the administrator, and when he was called and proposed to be examined as a witness by the appellants, his counsel objected, and the objection was sustained.

The 35th section of the act in regard to the duties of executors and administrators in the payment of debts and legacies, provides that upon the presentation of a claim against the estate of any deceased person, the executor or administrator may require satisfactory vouchers in support thereof, and also the affidavit of the claimant that such claim is justly due and that no payments have been made thereon, and that there are no offsets against the same, to the knowledge of such claimant. In the present instance the account of the administrator was proved to the satisfaction of the surrogate, but he claimed, and now claims, that a rule applicable to all the other creditors of the estate has no application whatever to him, and that he is relieved from the necessity of saying under his oath that there have been no payments made upon the account, and that there are no offsets against the same. In this he is mistaken. In *Williams* v. *Purdy*, (6 *Paige*, 166,) the chancellor says, " He must, like other creditors, not only verify the

Terry *v.* Dayton.

justice of his claim by his oath, but if it is objected to he must establish it by legal evidence, in addition to his own oath. The object of requiring the affidavit of the creditor in such cases is not to prove the existence of the debt, as it is not evidence for that purpose. But it is to prevent the exhibition of fictitious claims against the estate of the decedent which have been discharged by him in his lifetime. And also to prevent the allowance of claims against which there existed a legal offset known only to the party presenting such claim, and which those who are interested in the estate of the decedent may be unable to establish by legal proof." (*See also Clark* v. *Clark,* 8 *Paige,* 152 ; *Dayton's Surrogate,* 478.) It was an error, therefore, to allow the administrator's account or claim against the estate, whatever may have been the force of the proof to establish it in the first instance, unless it was first verified by the oath of the administrator. The surrogate erred in his construction of the statutes of distribution and descents. I concur in the reasoning of Mr. Justice Emott upon this question. The advancements proved to have been made to Eliza A. Terry, Hannah Terry, and Mary E. wife of Clark Hulse, should have been charged against their shares respectively.

The decree of the surrogate must be reversed, so far as the allowance of the administrator's account or claim against the estate is concerned ; and also in respect to the advancements to the three daughters of the intestate : and he should proceed to a re-examination, and take the account de novo. No costs are allowed to either party, upon this appeal.

EMOTT, J. I agree with Judge Brown in the views which he has taken of that part of this case which is discussed in his opinion, and I shall not advert to the points which he has examined. The answer of the respondents, to the petition of appeal, however, brings before us another question. This was a final accounting of the administrators of an intestate. It appeared that the deceased had in his lifetime made advancements to certain of his children. Some of these children were

living, and others had died leaving children, who were parties to this proceeding. It was claimed that these advancements should be taken into the account in the distribution of the estate. On the other hand, it was shown that the deceased left real estate which descended to his heirs. It was contended that this brought the case within the exceptions in the statute of distributions, (2 *R. S.* 98, § 78,) and that therefore the advancements could not be taken into the accounts of the estate in the surrogate's court. The surrogate held that the case was brought within the exception in the statute, and that he had no jurisdiction to allow the advancements, or take them into account in directing distribution of the personal estate. The advancements in question, it will be seen, were made in money, to the intestate's four daughters. I think the surrogate was in error as to his power and duty in the premises. By noting briefly the history of the law of advancements, and of the various statutes affecting it, we shall be able, I think, to see the mistake and its occasion, and also the true state of the law upon the subject. 1. At common law there was no notice taken of advancements, except in the case of estates in coparcenary, as to lands, and by the custom of London, of York and of Scotland, as to goods. (2 *Com.* 190, 517.) The case of lands held in coparcenery was the only instance of a title acquired by a number of persons jointly by inheritance, except under the custom of gavelkind in Kent. I do not find that the law of hotchpot or of advancements was ever applied to this species of estate. As to coparceners, the only application of the law of hotchpot was in the case of lands given in frank marriage, which was the only gift which was looked upon as an advancement in respect to lands. So that the only case in which by the general law of England lands descended to more than one person in equal shares—i. e. in the case of a man dying intestate and leaving daughters only—in which event they took as coparceners; in that case the law compelled any one of the daughters who had been advanced by a gift of land to bring her advancement into hotchpot, if she would

Terry *v.* Dayton.

take any share of the lands descended. The law of hotchpot was not precisely like the present law of advancements; but what is material to the present question is, that in the case of lands descended, the law did not regard any gifts as advancements, except gifts of lands; for estates in frank marriage were such exclusively. (2 *Com.* 115.) These advancements of land were accounted for in the division of an estate descended. 2. When the rights of children and relatives were firmly established against the claims of the administrator, and the statute of distribution was passed, (*Statutes of* 22, 23 *and* 29 *Charles* 2,) the same provision was introduced in substance which we now have, and which prevailed in certain parts of the realm, by custom, before. (2 *Com.* 517.) This extended to all advancements, whether of lands or goods; and it included of course as well the heir as the other children. The law of primogeniture forbade any interference with the inheritance where there was an heir entitled to the whole. But where the estate went into coparcenery then these advancements of lands had to be accounted for, and when there was personal estate all advancements, whether they had been made by lands or goods or money, were taken into the account in the distribution of the personal estate. 3. When primogeniture was abolished in this country after the revolution, although all the heirs at law took in the same manner as coparceners did at common law, there was no rule or provision for deducting advancements from the share of an heir in real estate. As to personal estate, the statute of distributions contained a provision similar to the English. (*See* 1 *R. L.* 311, 313.) But there was no such provision in the statute of descents. (*Id.* 52.) If therefore a child had been advanced to any amount, and the father died leaving only real estate, the advancement was not taken into account. 4. When the revised statutes were passed, the legislature introduced §§ 23, 24, 25, 26, to remedy what they considered an injustice in this particular, and to provide for an accounting and adjustment of all advancements against the shares of the heirs at law in the real

estate which descended to them. At the same time they retained the existing provisions in the statute of distributions. (2 *R. S.* 97, §§ 76, 77, 78.) These latter sections apply, as did the former and equivalent sections in the former statute of distributions (1 *R. L.* 313,) to personal estate only, although advancements of real estate are to be included. The sections of the present statute of distributions are not to apply when there shall be any real estate to descend to the heirs of the intestate. This means when there is any real estate at the time of the death. The statute must be construed as referring to that time, and the surrogate was right in supposing that in such a state of facts as the present this statute is excluded by its terms.

But this does not leave us without any provision upon the subject, when there is real estate; nor does it throw the burden and settlement of advancements upon the real estate exclusively. It leaves such a case under the provisions of the other statutes, of the 23d, 24th, 25th and 26th sections of the statute of descents, which apply both to real and personal estate, and govern the distribution of the former as well as the descent of the latter. This statute will apply and regulate both in all courts when either comes in question. It is a broader statute than the other, which is limited to a single case—that of a deceased leaving only personal estate. 6. I think, therefore, the surrogate was mistaken in supposing that his distribution of the personal estate was not affected by the statute and by the fact of advancement because there had been real estate also. 7. A question of more difficulty is how these advancements are to be accounted for when the parties entitled to the real and personal estate are not the same.

Upon reflection I am convinced that the rule required by equity, and that intended by the statutes is, that advancements which were made by real estate should go first against the real estate descended, and be charged upon the shares of heirs and against those who represent those shares; while on the other hand, advancements made in personal estate or

money should be first accounted for in the distribution of the personalty, and be charged upon the next of kin as such, and upon the shares which they represent.

In the present case the advancements were in money, and therefore properly chargeable in preference on the personal estate which is in controversy here. There is nothing inequitable to result from the previous position of the real estate.

My brethren concur with me, after consideration, in the views I have indicated of this part of the case. We are of opinion that the decree must be reversed, for the reasons assigned in both the opinions delivered, and the case remitted to the surrogate's court, with directions to proceed and state the account anew.

[DUTCHESS GENERAL TERM, May 14, 1860. *Lott, Emott* and *Brown,* Justices.]