IN RE ESTATE OF HENRY ELLIOTT, DECEASED, ON PETI-
TION FOR DISTRIBUTION, Defendant in
Error, v. JOHN A. WILSON AND
WIFE, Plaintiffs in Error.

Kansas City Court of Appeals, February 8, 1887.*

1. PROBATE COURTS—JURISDICTION—CHARACTER AND EXTENT OF.—The probate courts of this state are the creatures of the organic law. Their jurisdiction is defined and limited by section 34, article 6, of the constitution. The statute (section 1176, Revised Statutes), repeats the constitutional provision, in the matter of defining the jurisdiction of this court. It is a well-settled rule that the powers of such courts are entirely derivative. They possess no inherent powers, and exercise such only as are conferred by or implied from legislation ; and it is true, also, as to subjects of jurisdiction, for these are set down in the statutes. While these courts, in administering justice in proceedings where they have jurisdiction, may recognize common-law rules of procedure, in certain instances, yet they have no common-law or chancery jurisdiction.

2. ——— ——— PROCEEDINGS FOR DISTRIBUTION—NO POWER OVER HEIRS AS TO ADVANCEMENTS MADE IN REALTY IN LIFETIME OF INTESTATE—CASE ADJUDGED.—The probate courts of this state, in a proceeding for distribution of the surplus assets of the intestate's estate among the distributees, have no power to require the heirs to bring into hotchpot advancements made in realty to them by the intestate in his lifetime. Controversies with regard to the real estate must be settled in a different forum. In the administration law of this state there is no provision for bringing into hotchpot any advancements in realty made by the intestate, in his lifetime, to the distributees. As the court is only administering the personal estate on hand at the time of the testator's death (Rev. Stat., sect. 249), it has nothing to do with the realty disposed of by him in his lifetime, under this statute.

3. ——— ——— DESCENTS AND DISTRIBUTIONS—CONSTRUCTION OF SECTION 2166, REVISED STATUTES.—Section 2166, Revised Statutes (concerning descents and distributions), providing that, "When any of the children of the intestate shall have received, in his lifetime,

* NOTE.—Certified copy of this opinion was not delivered to me until December 3, 1887.—REPORTER.

any real or personal estate, by way of advancement, shall choose to come into partition with the other parceners, such advancement shall be brought into hotchpot with the estate descended," applies only to the instance of a partition suit among co-parceners, respecting lands descended. The term "parceners" has a well-defined meaning at common law, and applies only to lands descended by inheritance. Personalty does not descend to the heirs, but goes directly to the administrator, and belongs to him for administration and distribution. Where no lands have descended, there can be no parceners, and no partition, in the sense of this statute.

4. PROVISION FOR DECISIONS CONTRARY TO PREVIOUS DECISIONS—CONSTRUCTION OF SECTION 6, OF CONSTITUTIONAL AMENDMENT—LAWS, 1883, SECTION 6, PAGE 216.—Section 6, of the constitutional amendment (Laws Mo. 1883, p. 216), requiring this court to transmit causes to Supreme Court, for its final judgment, which any one of the judges shall deem contrary to previous decisions, etc., is retrospective in its operation, and applies to decisions of the St. Louis Court of Appeals, previous to the going into effect of said amendment. (Per ELLISON and HALL, JJ.; PHILIPS, P. J., dissenting).

ERROR to Cooper Circuit Court, HON. E. L. EDWARDS, Judge.

*Reversed and remanded with directions.*

*Order of transfer to Supreme Court.*

Statement of case by the court.

This was a proceeding instituted in the probate court of Cooper county, for distribution of the surplus personal estate in the hands of the petitioner, as administrator of the estate of Henry Elliott, deceased. It was based on that provision of the statute authorizing a distribution, after one year from grant of letters. The petition alleged that there was a certain amount of money in the hands of the administrator, after payment of all debts, etc., subject to distribution. It further alleged that the intestate, in his lifetime, had conveyed certain lands to his children, distributees of the estate, by way of advancement, and asked that the defendants be required to bring into hotchpot such advancement, to be deducted from their share of said money. The probate court made the order accordingly, and on a trial *de*

*novo* on appeal, in the circuit court, this order was affirmed. The defendants resist the action of the lower courts on the ground that the probate court had no power to require the grantees, in deeds made by the intestate in his lifetime, to account for the same in a proceeding in the probate court for the distribution of the personal assets.

To reverse the judgment of the circuit court, the defendants prosecute their writ of error.

COSGROVE, JOHNSTON & PIGOTT, for the plaintiffs in error.

I. The chief, and, in fact, the only question in this case, is as to the jurisdiction of the probate court in a proceeding of this kind. The petition filed in the probate court, and upon which this proceeding is based, asks, in substance, that the probate court, in distributing the personal estate of Henry Elliott, deceased, shall take into consideration advancements made in land to the distributees, in the lifetime of the deceased.

II. It is claimed by the plaintiffs in error that, under the statutes of Missouri, advancements can be brought into hotchpot upon partition only, whether in realty or personalty, and that the probate court, in ordering the distribution of the estate in the hands of the administrator, cannot consider such advancements. Rev. Stat., 1879, sect. 2166. In Maryland, where the statute on this subject is substantially the same as ours, this question has been decided, and the position of the plaintiffs in error fully sustained. The Supreme Court said : " In the distribution of the personal estate of James Pattison, by the orphans' court, several questions arose ; the order of the orphans' court excludes Jeremiah L. Pattison from any share of the fund to be distributed, because, in the opinion of the court, a conveyance of a tract of land to him was an advancement to him greater in value than his share of the estate. In this there is error. With the real estate of the de-

ceased, when and how he had disposed of it to his children, the orphans' court has no concern.　As one of the children of the deceased, he claims a child's portion of the personal estate, and even if there had been a total intestacy, it is by no law made the duty of the orphans' court to ascertain what portion of the real estate he received.　In a different form, and in a different forum, controversies in regard to the real estate must be settled." *Stewart v. Pattison*, 8 Gill [Md.] 46.　In another case, the same court said : "The assertion that the distribution of the realty with the personality, in hotchpot, is a legal or proper subject for the action of the orphans' court, is not supported by these cases, nor is it anywhere sanctioned by authority.　The several acts of assembly, from which the orphans' court derive their powers, restrict the action of those courts, in cases of intestacy, entirely to the personal assets.　None of them confer any jurisdiction over the realty." *Hayden v. Burch*, 9 Gill [Md.] 79.　In North Carolina, under a similar statute, it was said by the Supreme Court: "Advancements in personalty could not be taken into account in division of real estate prior to the statute of 1844, chapter 51, which provides for bringing advancements in personalty into hotchpot in distribution of personalty." *Lawrence v. Raynor*, Busbee [N. C. Law] 113 ; *Jones v. Jones*, 2 Murphey [N. C.] 150.　The same doctrine is held in Kentucky, under a statute very much like ours. "The doctrine is settled that advancements in property of that sort (slaves, which were realty) need not be brought into hotchpot to entitle the person who may have received the advancements to a distributive share of the goods and chattels." *Smith's Heirs v. Hoy's Heirs*, 3 T. B. Monroe [Ky.] 93 ; *Quinn v. Stockton*, 2 Littell [Ky.] 348 ; *Stone v. Halley*, 1 Dana [Ky.] 197 ; *Williams v. Stonestreet*, 3 Randolph [Va.] 561 ; *Knight v. Oliver*, 12 Grattan [Va.] 43.　The case of *Terry v. Dayton* (31 Barb. [N. Y.] 521, *et seq.*), seems to bear out the views of plaintiffs in error upon this question.

III. The case of *Ray v. Loper.* (65 Mo. 470), was relied upon by counsel for defendant in error, in the court below, in support of the petition, but we contend that this case in nowise militates against our theory, above suggested. It nowhere appeared in *Ray.v. Loper* that said cause was commenced in the probate court; but, on the contrary, it seems to have been a suit commenced in the circuit court, for the purpose of bringing into hotchpot certain lands claimed to have been advanced to one of the heirs. The circuit court is the only proper forum to settle a question of this character.

Draffen & Williams, for defendant in error.

I. It was the duty of the probate court to determine the amount due to each heir, and to make an order distributing the money in the hands of the administrator, according to the rights of the parties. Rev. Stat., chap. 1, art. 11, sects. 245, 249, *et seq.*

II. If the duty devolved upon the probate court of making distribution, it certainly had jurisdiction to decide how much was due to each party. It was as much bound by section 2166 as by any other section of the statute of descents and distributions.

III. The order of the probate court in no manner interfered with, or attempted to pass upon, any question relating to the partition of the lands of the deceased, as seems to be assumed by plaintiffs in error. "By bringing into hotchpot, under our statute, is not meant that the property given by way of advancement should, in kind or specie, be thrown in with the property which has descended from the parent, but that it should be estimated and charged against such child, according to its value at the time the advancement was made." *Ray v. Loper*, 65 Mo. 470.

IV. The probate court had jurisdiction to pass upon the question of advancements, and properly took the same into consideration in the distribution of the estate in the hands of the administrator. "To have re-

fused to do so would have been to disregard a plain provision of the law." It has been expressly so ruled both by the St. Louis Court of Appeals and the Supreme Court. *In re St. Vrain*, 1 Mo. App. 234; *Spradling v. Conway*, 51 Mo. 51.

Philips, P. J.—The single question for determination on this record is, had the probate court jurisdiction, or power, to take into the accounting between the distributees the value of advancements made them by the intestate, in realty, during his lifetime.

The contention of plaintiffs in error is, that the probate court has nothing to do with the realty of the deceased disposed of by him in his lifetime, and that its jurisdiction is confined to administering the personal estate existing at the time of the intestate's death; and that no power has been conferred upon the court to take an accounting, in the proceeding for distribution, of advancements made in realty during the lifetime of the intestate.

The probate courts of this state are the creatures of the organic law. Their jurisdiction is defined and limited by section 34, article 6, of the constitution: "Said court shall have jurisdiction over all matters pertaining to probate business, to granting letters-testamentary and of administration, the appointment of guardians and curators of minors and persons of unsound mind, settling the accounts of administrators, executors, curators, and guardians; and the sale and leasing of lands by administrators, curators, and guardians; and, also, jurisdiction over all matters relating to apprentices." The statute (Rev. Stat., sect. 1176) repeats the constitutional provision in the matter of defining the jurisdiction of this court. It is a well-settled rule that the powers of such courts are entirely derivative. They possess no inherent powers, and exercise "such only as are conferred by, or implied from, legislation; and it is true, also, as to subjects of jurisdiction, for these are set down in the statute."

*Shallenberger's Appeal*, 21 Pa. St. 341; *State ex rel. v. St. Louis Co. Court*, 38 Mo. 407–8 ; *Powers v. Blakely's Adm'r*, 16 Mo. 440. "A more salutary rule does not exist, nor one longer sanctioned by reason, experience, and authority, than that which circumscribes courts of limited powers and statutory origin within the confines of the statute which gives them being, and pronounces all their acts void which overstep the narrow boundary." *Jefferson County v. Cowan*, 54 Mo. 237, 238. While these courts, in administering justice in proceedings where they have jurisdiction, may recognize common-law rules of procedure, in certain instances, yet they have no common-law or chancery jurisdiction. *First Baptist Church v. Robberson*, 71 Mo. 335.

It was in recognition of this rule that the court of appeals of Maryland held that the orphans' court, of that state, in a proceeding for distribution of the surplus assets of the intestate's estate among the distributees, had no power to require the heirs to bring into hotchpot advancements made in realty to them by the intestate in his lifetime. *Stewart v. Pattison's Ex'r*, 8 Gill, 46 ; *Hayden v. Birch*, 9 Gill, 82. The court say : "With the real estate of the deceased, when and how he has disposed of it to his children, the orphans' court has no concern. Controversies with regard to the real estate must be settled in a different forum." "The assertion that the distribution of the realty with the personalty in hotchpot is a legal or proper subject for the action of an orphans' court, is not supportable by the cases, nor is it anywhere sanctioned by authority. The several acts of assembly, from which the orphans' court derives its powers, restrict the action of the court to the personal assets. None of them confer any jurisdiction over the realty."

In *Jones v. Jones* (2 Murphy [N. C.] 150), it was held that lands advanced to a child in the lifetime of the intestate cannot be brought into account in the settlemnte of the distributive shares of such children in the

personalty in administration. The case, while turning upon the construction of the various acts of assembly, is valuable as showing that, in the absence of express statutory authority, such jurisdiction cannot be exercised by these courts.

In the administration law of this state there is no provision for bringing into hotchpot any advancements in realty made by the intestate in his lifetime to the distributee. Section 249, Revised Statutes, simply provides that : " When any order for the partition or sale of personal property shall be made by the court, it shall settle the claims of the distributees." No one would, for a moment, pretend that this conferred any authority on the court to require the distributees to bring into hotchpot any advancements made to them by the intestate in his lifetime. As the court is only administering the personal estate on hand at the time of the intestate's death, it has nothing to do with the realty disposed of by him in his lifetime, under this statute.

Respondent admits that the authority for the action of the probate court exists, if at all, by virtue of section 2166, Revised Statutes, concerning " Descents and Distributions," which is as follows: "When any of the children of the intestate shall have received, in his lifetime, any real or personal estate, by way of advancement, shall choose to come into partition with the other parceners, such advancement shall be brought into hotchpot with the estate descended." It is clear to my mind that this provision applies only to the instance of a partition suit among co-parceners respecting lands descended. Where the framer of an act employs terms of a well-defined meaning at common law, they must be understood and accepted as having been inserted with the meaning attached to them at common law. *Ex parte Slater*, 72 Mo. 106; *State v. Kelm*, 79 Mo. 515. The term "parceners" has a well-defined meaning at

common law, and applies only to lands descended by inheritance. 2 Black. Com. 187. An "estate descended" clearly applies to real estate. Personalty does not descend to the heirs. It goes directly to the administrator, and belongs to him for administration and distribution. *Smith v. Dinney*, 37 Mo. 20; *State ex rel. v. Moore*, 18 Mo. App. 410-411. This section of the statute, therefore, has no reference to the distribution or partition of personal estate. It provides only for the instance where an "estate" has *descended*, in lands, and the parceners come into partition. Such of them as have received, by way of advancement, any real or personal property from the intestate in his lifetime, shall bring such advancement into hotchpot before they can participate in the estate descended. Where no lands have descended there can be no parceners, and no partition in the sense of this statute.

A brief reference to the origin of this law and legislation, will make the view we entertain quite clear. At common law advancements were not recognized, save in the case of co-parceners (2 Black. Com. 190), and the doctrine of hotchpot did not apply except as to lands "given in frank-marriage." 2 Black. Com. 191. Such advancements were only accounted for in the case of an estate descended. As at common law, the surplus assets in the hands of an administrator were appropriated by him, the injustice led to the enactment of the statute of distributions (2 Charles Stat. 22, 25, 29); which, in partition proper, extended to all advancements, both of lands, goods, or money. This statute also provided that when there was personal estate for distribution, all advancements of lands, goods, or money, should be taken into account. And, as stated by Emot, J., in his review of this question, in *Terry v. Dayton* (31 Barb. 523), on the abolition of the law of primogeniture, after the American revolution, "although all the heirs-at-law took in the same manner as co-parceners did at common law, there was no rule or provision for deducting ad-

vancements from the share of an heir in real estate. If, therefore, a child had been advanced to any amount, and the father died leaving only real estate, the advancements were not taken into account." To remedy this injustice the legislature of New York passed a law providing for an accounting of all advancements against the share of the heir-at-law "in the *real estate which descended to him.*" *Terry v. Daily, supra.* Hence the provision found in said section 2166 was early enacted into our statute law, and no doubt was designed to meet the very purpose above indicated. The New York legislature, by the same statute, preserved the provision similar to the English statute respecting an accounting for advancements in distributing the personal estate. But no such provision is found in our statute.

So we find in an early statute of the state of Virginia (12 Henry Stat. at Large, 139, passed in 1785), the following provision: "Where any of the children of the intestate, or their issue, shall have received from the intestate, in his lifetime, any real estate by way of advancement, and shall choose to come into partition with the other parceners, such advancement shall be brought into hotchpot with the estate descended." Then, in a separate statute (12 Henry Stat. at Large, 146), in an act concerning wills and the distribution of estates, it was enacted, "that where any children of an intestate, or their issue, shall have received from the intestate, in his lifetime, any personal estate, by way of advancement, shall choose to come into the distribution with the other persons entitled, such advancement shall be brought into the hotchpot with the distributable surplus." It will be observed that the only difference between the first provision of the Virginia statute, and section 2166 of our statute, is that the parcener is required to bring into hotchpot, in addition to any advancement in realty, any in personalty. But we have no such provision as that in the second enactment of the

Virginia statute. Of these sections of the Virginia statute, the court, in *Williams v. Stonestreet* (3 Randolph, 561), say : "Real advancements are to be brought into partition with '*the estate descended*'—terms applicable *only to real estate;* and personal advancements are to be brought into distribution with distributable surplus—terms applicable to personal estates only."

In confirmation of the views heretofore expressed, as to the office of said section 2166, the court in *Terry v. Daily* (*supra*), says : "The sections of the present statute of distributions are not to apply when there shall be any real estate to descend to the heirs of the intestate. This means when there is any real estate at the time of the death. The statute must be construed as referring to that time, and the surrogate was right in supposing that in such a state of facts as the present, this statute is excluded by its terms." In other words, the holding is, that under a statute like section 2166 of our statute, relied on by the lower court, there can be no accounting, in distributing the personal estate, of advancements predicated of such a provision. It applies only to the instance where lands have descended in parcenery, and there is to be a partition thereof among the parceners.

The opinion of Henry, J., in *Ray v. Loper* (65 Mo. 472), is relied on to support the rulings of the lower courts. The paragraph of the opinion supposed to cover the point in question, is as follows : "A voluntary conveyance of land by a parent to a child, is *prima facie* an advancement, and if the party to whom the advancement was made comes in for a distributive share of the estate of the parent, such advancement shall be brought into hotchpot with the estate descended." As it does not appear, from the report, in what jurisdiction that action originated, or what was its character, I have taken the trouble and pains to ascertain the facts from the transcript of the record on file in the Supreme Court. As I anticipated the action originated in the

circuit court, and was a proceeding in partition of land held in parcenery. To that case the provisions of said section 2166 applied. And while the phrase, "a distributive share of the estate," strictly speaking, applies peculiarly to personalty under administration, yet the quality of the "estate," in the mind of the learned judge, is clearly enough indicated by saying, "such advancement shall be brought into the hotchpot with the *estate descended*." The language employed must be understood with reference to the facts and the subject-matter of the case then under consideration. It was the "share" in the lands to be divided and apportioned that was to be affected by the advancements made.

I am not unmindful of the fact that the St. Louis Court of Appeals, *In the Matter of the Estate of St. Vrain* (1 Mo. App. 294), assumed that the provisions of section 2166 were applicable to a proceeding like this. I am satisfied that had the attention of the learned judge, who wrote the opinion, been directed to the phraseology and true office of this section, we would have been spared the embarrassment of this disagreement. As that opinion was delivered long anterior to the adoption of the constitutional amendment creating this court, I am of opinion that this disagreement does not fall within the terms of section 6 (Laws 1883, 216) of the constitutional amendment requiring us to transmit the cause to the Supreme Court for its final judgment. That provision is prospective in its operation. It is the well-settled rule of construction that all laws are prospective in their operation, unless a different effect is clearly expressed in the act. As said in *Smith v. Auditor* (20 Mich. 396), "undoubtedly statutes are to be construed as prospective only, if possible." *State ex. rel. v. Auditor*, 41 Mo. 28; Sedgewick on Con. Stat. 161*a*. This rule is peculiarly to be observed respecting laws going into effect at a future day. *Dewart v. Purdy*, 29 Pa. St. 113.

As by the amendment to the constitution two ap-

pellate courts were put into operation, whose judgments over given subjects were to be final, and these courts were to sit at different points in the state, preventing conference as to any opinions to be delivered, so that differences would likely occur, as a means of preserving the desired harmony in rulings by these courts, the section in question provided for the reference to the Supreme Court of any opinions thereafter (clearly as I think) delivered by either court in conflict with the other. The framers of the law were not concerning themselves about decisions made by the St. Louis Court of Appeals under the former arrangement. They were providing for the new order of things created by the amendment, to go into effect on its adoption. It was not designed, in my opinion, to still further burden the Supreme Court with passing on every point of disagreement with any opinion delivered by the old court of appeals from its first origin. The very purpose of the new amendment was to relieve the overburdened Supreme Court, and not add other work beyond the necessities and obvious plan of the scheme devised. But my associates are of opinion that the said section is retrospective in its operation; and, while concurring in the views expressed in the foregoing opinion, touching the merits, demand that the cause shall be transferred to the Supreme Court, on the ground that my opinion is in conflict with that of the St. Louis Court of Appeals, in *In re St. Vrain* (*supra*).

The judgment of the circuit court is, accordingly, reversed, and the cause is remanded with directions to proceed in conformity with the foregoing opinion; the mandate to be stayed until the determination of the cause in the Supreme Court, whither it is ordered to be sent by Ellison and Hall, JJ.