## In re SAUNDERS' ESTATE.

*(Surrogate's Court, Cattaraugus County, Filed June 12, 1893.*

1. EXECUTORS AND ADMINISTRATORS—NEGLIGENCE—PERSONAL LIABILITY.

When an invalid claim is presented to an administrator, and he, although doubting its validity, yet willing to have it in some manner made binding upon the estate, agreed to refer it, but neglected to employ counsel to protect the estate before the referee, neglected to oppose the confirmation of the report allowing the claim, failed to appeal from the judgment thereon, or adopt any other measures to relieve the estate therefrom, he is guilty of such negligence as to render him liable personally, and contestants will not be driven to the expedient of moving to set the judgment aside.

2. SAME—INTEREST ON USE OF PROPERTY.

An administrator will be charged with the value of the use of personal property, consisting of farming stock and implements of husbandry, of which he had the avails between decedent's death and the sale thereof.

3. SAME—INTEREST ON UNINVESTED MONEYS.

An administrator will be charged with interest on moneys of the estate which he might have invested, after allowing him a reasonable length of time (six months) in which to invest it.

4. SAME—INTEREST UPON PERSONAL CLAIM.

An administrator is entitled to interest upon a claim due to himself, although he received funds sufficient to defray same, as he is without authority to retain his own debt till allowed to him by the surrogate upon his accounting.

**5. SAME—PROOF OF PERSONAL CLAIM.**

> Existence of an alleged claim due to an administrator must be established by legal evidence. Mere presentation thereof with an affidavit of verification is not sufficient.

**6. SAME.**

> When an account filed and verified by an administrator claiming a debt due to himself, concedes payments to substantially the full amount of the claim as established, such payments will be set off as against the amount so established, and will not be applied upon that portion of the account which the executor fails to establish.

Judicial settlement of administrator's accounts, and proof of a personal claim due him.

N. M. Allen, for administrator; J. M. Congdon, for contestants.

DAVIE, S.—David Saunders died, intestate, at the town of Perrysburg, Cattaraugus County, March 2, 1891, and letters of administration upon his estate were issued to William Saunders, a son, on the 12th day of the same month. The administrator now presents his accounts for judicial settlement, and also seeks to establish a personal claim against the estate. Various items of the account, as well as a portion of such personal claim, are contested. The intestate, at the time of his death, was the owner of two farms, with a considerable amount of personal property thereon. The larger farm was incumbered by real estate mortgage held by one Webster. Upon the small farm were two mortgages, one for $800, and one for $200, originally given to one Edwards, but assigned to the wife of the administrator prior to the death of the intestate. The bond of intestate accompanied the $800 mortgage, but not the other. The small mortgage was given to secure the repayment of money loaned by Edwards to intestate, but contained no covenant to pay the same, nor does it appear that any note or other written evidence of the indebtedness was given. Shortly after the death of intestate, the wife of the administrator, at his suggestion, and through his advice, began a foreclosure of the $800 mortgage,

22

which resulted in a sale of the premises to the administrator
for the sum of $700, and in a deficiency judgment of $320.
Very soon thereafter, Webster began a foreclosure of his mort-
gage, and prosecuted the same to judgment and sale of the prem-
ises, the administrator and his partner, one Taylor, purchasing
the same.   About the time of this last sale the administrator
caused the personal estate of intestate to be sold at public auc-
tion, and the same was purchased by the said Taylor, who di-
rectly thereafter transferred a one-half interest in the same to
the administrator.   The total amount paid by Taylor and the
administrator for the real estate was much less than the actual
value thereof.   After the completion of the Webster foreclos-
ure, proceedings were instituted to obtain the surplus moneys
arising therefrom, which resulted in an order of the special
term of the Supreme Court for the payment of the same to the
administrator.   The amount of such surplus was $959.03, and
was paid to the administrator December 31, 1891.   After the
foreclosure on behalf of the wife, Mrs. Saunders, was completed,
she caused a statement of her claim against the estate to be pre-
pared, setting forth the amount of her deficiency judgment, also
the amount of her $200 mortgage, and the same was presented
by her attorney to the administrator for payment, who formally
rejected the same, and an agreement for a reference of the claim
under the statute was prepared by said attorney, a referee se-
lected, and the parties appeared before the referee, the wife
accompanied by her attorney, the administrator without counsel,
and such formal proof thereupon taken that the referee reported
in favor of the entire claim, including the amount of said
$200 mortgage, which report was confirmed, without opposition
on part of the administrator, and judgment entered thereon;
and among the various items with which the administrator
credits himself in his account is the total amount of this judg-
ment, and, while contestants concede that it is not permissible
in this proceeding to attack the validity of this judgment, they
contend that the conduct of the administrator in neglecting to
defend against this claim renders him personally liable for all

thereof, except the original amount of the deficiency judgment. In other words, the contestants assert that there was no necessity or authority for a reference so far as the deficiency judgment was concerned, and that the expenses of such reference were needlessly made, and that no part of the $200 mortgage was a valid claim against the estate, and that it was solely through the negligence of the administrator that it was permitted to assume the form of a judgment against the estate.

It is undoubtedly true that this judgment itself cannot to any extent be impeached upon this accounting. It has become an absolute claim against the estate, and, in consequence, necessarily payable from the funds of the estate; and the only object in now examining the merits of the claim, so far as the $200 mortgage is concerned, is to determine whether the facts refute or sustain the charge of negligence made against she administrator; and for such purpose it is competent to inquire, first, whether such claim was originally valid, and, second, if not, whether the administrator has exercised reasonable care and prudence in defending against it; for, if such claim was in the first instance a valid and binding one, no negligence can be attributed to the administrator for failing to defend, but if originally invalid, and it has assumed its present form in consequence of the collusion, heedlessness, or negligence of the administrator, then he is liable personally. The duties of an executor or administrator in the performance of his trust are well defined. Such acts of carelessness or negligent administration as defeat the rights of creditors, legatees, or other parties entitled to distribution amounts to a devastavit. If one accepts such office, he is bound to use due diligence, and not suffer the estate to be injured through his neglect. He is required to exercise such prudence and diligence in the management of the estate as men of discretion and intelligence in general employ in their own like affairs. Hollister v. Burritt, 14 Hun, 291-293; McRae v. McRae, 3 Bradf. Sur. 199; McCabe v. Fowler, 84 N. Y. 314. It is provided by statute that "no mortgage shall be construed as implying a covenant for the payment of

the sum intended to be secured, and when there shall be no express covenant for such payment contained in the mortgage, and no bond or other separate instrument to secure such payment shall have been given, the remedies of the mortgagee shall be confined to the lands mentioned in the mortgage." 1 Rev. St. p. 738, sec. 139. The slightest reference to the authorities bearing upon this question shows that this claim upon the $200 mortgage originally had no semblance of validity or legality against the estate. The remedies of the original mortgagee were confined to the land covered by the mortgage, and Mrs. Saunders, the assignee, obtained no greater rights. Severance v. Griffith, 2 Lans. 38; Hone v. Fisher, 2 Barb. Ch. 560; Gaylord v. Knapp, 15 Hun, 87; Vrooman v. Dunlap, 30 Barb. 203; Spencer v. Spencer, 95 N. Y. 353.

What, then, was the duty of the administrator upon the presentation of this claim? What would an ordinarily prudent man have done under the same circumstances in the management of his own affairs? What would this administrator himself have done had the claimant been other than his own wife? The exercise of reasonable diligence not only required him to formally reject such claim, but to resist payment, and to resort to the usual methods of defense for the purpose of defeating a recovery thereon. How has he performed such duty? This question may be best answered by quoting from his own evidence. When this claim was presented by the attorney for the wife, the administrator says:

"I think I asked him if there was not some other way of getting at it than for me to allow the claim. He asked me if I would not allow it. He said it could be referred. I think that was the way it was left. I might have asked how or in what way it could be done. He said he could select a referee, with the surrogate's approval, to inquire into it. I agreed to that. I said I thought that the better way than for me to allow it. He was representing both of us in what he did in the matter. He was my attorney, as administrator, up to that time, and has been ever since. Seems to me he drew up a paper that day

naming a referee, and I signed it. There was no bond with this mortgage. I owned it at one time. I do not know as I ever knew what point was going to the referee for determination. After this claim was made out and presented to me, I never went to consult with any other attorney as to what was best for me to do, nor did I talk with any of the other heirs, unless it was Mrs. Weaver, and I don't know as I talked with her. The hearing was held at the attorney's office. The attorney, the referee, my wife, and myself were present at the time of the hearing. I had no attorney there to represent my side of the case. Mr. Allen was there, but I don't know whether he was acting for me or for her. I gave no proof upon the hearing. I made no opposition to the motion for confirmation of the referee's report in favor of this claim."

The evidence shows that the proceedings before the referee were merely formal. The attorney for the wife presented these mortgages, and stated the facts concerning them. No authorities were cited, and no argument made. The report was drawn by the attorney, and signed by the referee; confirmed by the special term, without opposition; and judgment entered thereon. Upon carefully reviewing all the evidence, I am firmly of the opinion that the administrator, while himself doubting the validity of this claim, yet willing to have it in some manner made binding upon the estate, neglecting to employ counsel to represent and protect the interests of the estate before the referee, neglecting to oppose the motion for confirmation of the report, failing to take any appeal from the judgment rendered thereon, or any other measures to relieve the estate therefrom, was guilty of such a degree of negligence as to make him liable personally. I see but little force in the suggestion, on behalf of the administrator, that, if contestants desire to free themselves from the burden of this judgment, they must do so by moving to set the judgment aside. Possibly they might secure relief in that manner, but they should not be driven to that expedient. Adequate relief can be afforded them in this proceeding by holding that the estate has sustained this loss in

consequence of the fault and neglect of the administrator, and that he must make the loss good.

But it is suggested that every fact relating to this mortgage in question was fully presented to the referee, and that the administrator, by the exercise of the utmost diligence, could have established no further facts. That may be true, but the difficulty with that proceeding does not seem to have been so much with the facts as with the law applicable thereto. It was no more the duty of the administrator to secure a full presentation of the facts before the referee than it was to secure the services of some competent person to present to the referee the legal principles applicable thereto, and it is entirely apparent that the slightest reference to the authorities above cited would have resulted in defeating this claim. In place of providing the estate with the protection which would have been afforded by the services of a competent attorney upon the hearing, the administrator attends such hearing alone, objects to nothing, but evidently acquiescing in and consenting to all that was being said or done to fix this liability upon the estate. In other words, he practically, and it seems to me needlessly and unjustly, submitted to a default in this matter. While it is difficult to understand how the interests of this estate have been in the least subserved by the reference to the claim based upon the deficiency judgment, and while it may be very seriously doubted as to whether there was any sanction or authority for such practice, I am hardly willing to go to the extent of holding that the administrator should be personally charged with the expenses and disbursements of such reference.

The personal estate of the intestate consisted, in part, of thirty-six dairy cows, one ox team, and one horse team, besides various farming tools and implements. The administrator used such personal property, to a greater or less extent, from the death of the intestate to the sale thereof, on the 3rd of August, 1891, and had the avails thereof for his own individual benefit. The evidence shows that the use of such property during that

time was fairly worth the sum of $288, and the administrator should be charged with that amount.

No claim is made against the administrator for interest upon the proceeds of the sale of the personal estate, but it is claimed by the contestants that he should be charged with interest upon the surplus moneys received by him as above stated, to wit, $959.03, on December 31, 1891. He accounts for no interest thereon, nor does the evidence show that he has actually received any income therefrom, but there was nothing in the financial condition of this estate which justified the administrator in permitting this fund to lie idle and unproductive. He was entitled to a reasonable length of time in which to invest it. Six months was entirely sufficient for that purpose, and he should be charged with interest thereon after the expiration of six months from date of its receipt by him. Halsted v. Hyman, 3 Bradf. Sur. 426; Redf. Law & Pr. Sur. Cts. (3rd Ed.) 519.

The remaining questions in this case relate to the administrator's personal claim. A portion of such personal claim consists of three promissory notes made by the intestate, and payable to the order of the administrator. The execution and delivery of these notes is established by the evidence. Their validity as subsisting claims against the estate is substantially conceded. The only question regarding them is as to the time for which interest should be allowed the administrator thereon, the contestants objecting to the allowance of any interest thereon after the sale of the personal estate, and the receipt by the administrator of sufficient funds therefrom to fully satisfy these demands. Executors and administrators are expressly forbidden by statute from retaining any portion of the estate in satisfaction of their own debt or claim "until it shall have been proved to and allowed by the surrogate." 2 Rev. St. p. 88, sec. 33. Upon the judicial settlement of an executor or administrator, he may prove any debt owing to him by the decedent. Code Civil Pro. section 2739. But the surrogate has no jurisdiction to entertain a proceeding solely for the purpose of proving such personal claim. *In re* Ryder, 129 N. Y. 640, 29 N. E. Rep. 309. So

the situation is that, while the administrator is forbidden by statute from paying his own claim until it shall have been properly established, he is afforded no opportunity, under the rules of practice, of so establishing the same until the judicial settlement of his accounts: It cannot be claimed that the administrator in this case has unreasonably delayed such judicial settlement. He is in no manner responsible for the delays which the law has imposed upon him in the adjustment of such claim, and he should not be deprived of his interest.

The balance of the administrator's personal claim consists of various items of account for work performed and money expended by the administrator for the intestate from May 27 to September 26, 1890, amounting in all to the sum of $336.60. The claim is verified in the usual manner, and admits payments of various sums upon said account, to the amount of $195.45. While the administrator is required to present his claim, accompanied by his affidavit, verifying the same, before it can be allowed (Terry v. Hayton, 31 Barb. 519), such verification in no way establishes the validity of such claim. The existence of the debt must be established by legal evidence. Underhill v. Newburger, 4 Redf. Sur. 499 ; Williams v. Purdy, 6 Paige, 168. Claims on part of personal representatives against the estates they represent are regarded with more or less suspicion when not founded upon some written obligation to pay. Wood v. Rusco, 4 Redf. Sur. 380; Kearney v. McKeon, 85 N. Y. 136, 137. Upon the trial no evidence was given establishing, or tending to establish, some of the items of said account. The evidence relating to the balance thereof was very slight and unsatisfactory, but perhaps sufficient *prima facie;* and, allowing the utmost latitude to the testimony offered in support of this claim, the total amount of all items proven is the sum of $193.39. It is contended that no part of this amount even should be allowed; that the presumption arising from the giving of the note by intestate to the administrator under date of November 25, 1890, which was after the close of the account sought to be established, is that such note was given in full set-

tlement of all mutual accounts up to that date, and there seems to be some authority for such contention. Lake v. Tysen, 6 N. Y. 461; Maxon v. Scott, 55 N. Y. 249. It is not, however, necessary to determine to what extent these authorities are applicable to this case, as there appears to be a more serious objection to the allowance of any part of this account. The account filed and verified by the administrator admits actual payments thereon, stating the date and amount of such payments, respectively, aggregating the sum of $195.45. Such admission cannot be overlooked or disregarded in this matter, although there was no other evidence of payment presented on the trial. Such account is in the nature of a pleading. It is a part of the records of the case. It concedes payments to substantially the full amount of the claim established, and there is no authority for holding that such payments should be applied upon that portion of the account which the administrator, in consequence of his disability as a witness, or for other reasons, is unable to establish. But it is urged by the administrator that contestants cannot avail themselves of the admission of payment in the account without coupling such admission with the allegation of indebtedness therein, taking it all together; that we are not permitted to select from the account filed a portion thereof, unfavorable to, and militating against, the administrator, and disregard the other portion in his favor. However much force there may be to these suggestions, the courts have held directly to the contrary. White v. Smith, 46 N. Y. 418.

A decree will be entered in conformity with the conclusions above stated.