(115 App. Div. 626)

THIELER v. RAYNER et al.

(Supreme Court, Appellate Division, Second Department.　November 16, 1906.)

1. PERPETUITIES—SUSPENSION OF POWER OF ALIENATION.

Where, by the terms of a will devising real estate, a deed executed by the life tenants and the remaindermen will convey an absolute fee, there is no restraint on alienation or violation of the rule against perpetuities, within the statute.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Perpetuities, §§ 45, 51.]

Appeal from Special Term, Kings County.

Action by Christian Thieler against Mary Rayner and another, individually and as executrix of Theodore Thieler, deceased, and others. From a judgment for defendants, plaintiff appeals.　Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, MILLER, and GAYNOR, JJ.

Edward G. Nelson, for appellant.

Herbert L. Fordham (Townsend Scudder, Gotthardt A. Litthauer, and J. Mayhew Wainwright, on the brief), for respondents.

WOODWARD, J.　It distinctly appears by the terms of the will itself, the validity of which is attacked in this case, that a deed executed by the life tenants and the remaindermen would convey an absolute title in fee.　Under these circumstances there is no restraint upon alienation or violation of the rule against perpetuities within the express definition of the statute.

The judgment should be affirmed, with costs.　All concur.

---

(115 App. Div. 310)

In re WATSON et al.

(Supreme Court, Appellate Division, First Department.　November 5, 1906.)

1. EXECUTORS—SETTLEMENT OF ACCOUNT—JUDGMENT OF REFEREE.

Where, on presentation of a claim against the estate of a decedent by his widow, it was disallowed by the executors and referred, but the executors not only failed to defend the claim, but failed to present the facts within their knowledge to the referee, his judgment allowing the claim could not be relied on to protect the executors in their payment of it.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 841, 1103.]

2. SAME—CLAIMS AGAINST DECEDENT'S ESTATE—FUNDS INVESTED.

Where a wife placed money and property in the control of her husband, and he invested them, together with a greater amount of his own funds and conveyed to her the greater proportion of the property he procured, his estate after his death is not liable for the amount she placed in his hands, and hence she held no proper claim against his executors for the amount, though the investment was a failure resulting in a loss of the fund.

3. SAME—PAYMENT OF CLAIM—LIABILITY OF EXECUTORS.

Where executors, doubting the validity of a claim of the decedent's widow against the estate, disallowed it, but on reference failed to defend the claim or to present the facts within their knowledge to the referee, and the claim was in fact improper, the executors' accounts were properly sur-

charged with the amount paid on the judgment of the referee allowing the claim.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 1103, 2065.]

O'Brien, P. J., and Ingraham, J., dissenting.

Appeal from Surrogate's Court, New York County.

In the matter of the judicial settlement of the account of Thomas Watson and others, as executors of Joseph Corbit, deceased. From a decree settling their accounts, the executors appeal. Affirmed.

See 92 N. Y. Supp. 195.

Appeal by the petitioners, Thomas Watson and others, as executors, etc., of Josph Corbit, deceased, from a decree of the Surrogate's Court judicially settling the accounts of said executors, in so far as it surcharges their account in certain respects and reduces their commissions. The principal item surcharged is a judgment for $10,423.55 recovered by the widow of the testator. The executors-appellants were charged with this judgment on the ground that they were guilty of negligence or collusion in defrauding the estate against it. The claim of the widow was for money which she alleged was intrusted to testator during his lifetime, to the amount of $9,000, with interest, being the proceeds of a farm at Plainfield, N. J., known as "Oak Tree Farm," and $3,000 cash, less $1,500, which was the proceeds of the sale of a house at 172 East Ninetieth street after payment of a mortgage thereon, which house came into the possession of the widow during the lifetime of the testator. The transactions upon which this claim is based were found by the referee to be as follows: When claimant and testator were married in June, 1895, claimant owned a farm in New Jersey known as "Oak Tree Farm." On the 18th of January, 1896, claimant made a contract with one Ritzmann to purchase the leasehold of 106 Eighth avenue for $27,250, this sum to be paid by assuming a mortgage of $12,500, by the transfer of the Oak Tree farm at a valuation of $6,000, the giving of a purchase money mortgage on said leasehold for $3,000, and balance to be paid in cash in February, 1896. On February 11, 1896, claimant directed that the assignment of the lease of No. 106 Eighth Avenue be made to her husband and herself, and it was so made. Testator, however, made the cash payments upon the above contract and also paid the $3,000 mortgage. In June, 1897, the testator and wife transferred the leasehold back to Ritzmann, and received therefor, on even terms, Nos. 170 and 172 East Ninetieth street; No. 170 being taken in the name of the testator and No. 172 being taken in the name of the wife. The houses were apparently similar and were subject to mortgages; the mortgage upon No. 172 exceeding that upon No. 170 by $500. Subsequently, however, testator paid off $2,500 upon No. 172. No. 172 remained the property of claimant until after the death of the testator, and it was for this house that she gave a credit of $1,500, although the referee found that after the payment of commissions, back interest, and taxes she received from the sale only $171.21; $1,500 being the difference between the face of the mortgages and the price received. It was also found that claimant had delivered $3,000 in cash to testator shortly before the first of these transactions. By his will testator gave claimant his farm in Rahway, N. J., together with all the buildings and improvements thereon, and all the stocks, crops, farming implements, and household furniture thereat, the house No. 132 West Fifteenth street, $3,000 in cash, the furniture in their New York home, and all the articles bought by the claimant. The will then recites: "The above devises and legacies are given to my said wife and to be accepted by her in lieu and stead of all her dower and right of dower and rights and interests in and to my real and personal estate." Upon the presentation of the claim by the widow it was rejected by the executors and thereafter referred to a referee. Upon the hearing one of the executors, Watson, and the widow gave evidence in support of the claim. No objection to the testimony of the widow, under section 829 of the Code of Civil Procedure, was made, and no real defense to her cause of action was interposed; many of the facts recited above not being

brought out upon that hearing. The referee in this proceeding found that contest to have been merely "pro forma" and made for the purpose of protecting them (the executors) in the ultimate payment by them of the alleged claim. It was upon this negligence or collusion on the part of the executors that the decision surcharging them for the payment is based.

Argued before O'BRIEN, P. J., and INGRAHAM, CLARKE, HOUGHTON, and SCOTT, JJ.

Henry A. Forster, for appellants.
Richard R. Martin, for respondents Bunnell and others.
Ellen T. Bennett, for respondents Patterson and others.
William E. Carnochan, for respondent Board of Foreign Missions.

SCOTT, J. It is very obvious that the executors cannot justify their payment of $10,423.55 to Mrs. Corbit merely by proof of the judgment in her favor rendered upon the reference of her claim. Not only did they make no real defense to the claim, but the executor Watson, who was a witness upon the reference, and who confessedly knew all about the transaction between Mr. Corbit and his wife, did not lay all the facts before the referee. It is made very plain from the evidence and the circumstances that the executors desired to pay Mrs. Corbit's claim (doubtless honestly deeming it an equitable one), but so far doubted its legal validity as to be unwilling to pay it unless protected by a judgment. If such a judgment had been fairly obtained by the claimant after all the facts had been laid before the court, it would have been a sufficient answer to the effort now made to surcharge the executors' accounts with the amount paid. But under the circumstances disclosed by the record we must agree with the referee that the judgment affords no defense to the executors. It follows that the judgment should be left out of view, and the liability of the executors tested as if the payment had been a voluntary one, with full knowledge of the facts. Mrs. Corbit's claim, as submitted to the executors, states that she "intrusted to said Joseph Corbit for investment and to be dealt with by him for the benefit of this claimant" the sum of $3,000 in cash and a farm of the value of $6,000. Her precise claim, therefore, is that this money and the proceeds of the farm were to be invested for her. It is not claimed or suggested that the money was loaned or paid for any other purpose than that of investment. The first investment was in the Eighth avenue leasehold, the title to which was taken·in the joint name of Mr. and Mrs. Corbit. This was paid for partly by mortgage, and partly by the transfer of Mrs. Corbit's farm, and partly in cash. Mrs. Corbit's contribution was her farm, valued at $6,000. Mr. Corbit paid in cash, in closing the transaction, $5,750, and subsequently paid off a mortgage of $3,000 upon the property, making his cash contribution towards the purchase $8,750. Thus it appears that Joseph Corbit contributed to the joint investment in the Eighth avenue property $2,750 more than was contributed by his wife. When the two joint investments were transformed into two separate investments by the exchange of the Eighth avenue leasehold for two houses in Ninetieth street of identical character and value, the house taken by Mrs. Corbit was more heavily mortgaged by $500 than was that taken by her husband. He, however, more than equalized this discrepancy

by paying off a mortgage of $2,500 on Mrs. Corbit's house, thus leaving it less heavily mortgaged than was his own by $2,000. The net result was that Joseph Corbit, after paying out for the joint property $2,750 more than his wife had contributed, had caused to be conveyed to her, in exchange for her one-half of the venture, a house equal in every way to the one he took himself, upon which he had so reduced the mortgage loaned that it was less by $2,000 than the amount for which his house was mortgaged. In other words, by the cash expenditure of $4,750 more than his wife had contributed, he had given her the best of the transaction by $2,000. It is true that, as the referee has found, Corbit also received from his wife at some time the sum of $3,000 in cash, but even charging him with this, the exact investment of which is not traced, the fact remains that he expended $1,750 more than his wife contributed or paid to him. There is certainly nothing in these facts to indicate that Mr. Corbit treated his wife unfairly, or took any advantage of the trust and confidence which she reposed in him. On the contrary, he seems to have treated her not only fairly, but even generously. It is true that the investment turned out unfortunately, but there is nothing to indicate that this resulted from anything more than an error of judgment, from the consequences of which Mr. Corbit suffered as well as his wife. Under these circumstances we are unable to see that Mrs. Corbit had any just or valid claim against her husband's estate for the amount intrusted to him for investment. It remains to consider whether the executors were liable for the amount they paid upon this unfounded claim. It is the general rule that, if an executor or administrator assumes to pay a demand which has no legal foundation and could not have been recovered, the claim may properly be disallowed upon his accounting (Dye v. Kerr, 15 Barb. [N. Y.] 444) ; and, if he negligently allows an invalid claim to go to judgment without making an honest contest, the judgment will afford him no shield, and he may properly be charged with this amount (Re Saunders [Surr.] 23 N. Y. Supp. 829, 4 Misc. Rep. 28). Of course, an executor is not to be charged as an insurer of the validity of every claim which he pays even without the protection of a judgment, but, if there be no judgment effective for his protection, he must at least show that in paying the claim, as in other acts of administration, he employed such prudence and such diligence in the care and management of the estate or property as, in general, prudent men of discretion and intelligence employ in their own like affairs. King v. Talbot, 40 N. Y. 76. Do the executors show that they exercised such diligence and prudence in paying Mrs. Corbit's claim, or, rather, in consenting that she have a judgment for it? We think not. They knew, or at least one of them knew and the others are chargeable with knowledge, the exact facts respecting the investment which Mr. Corbit had made. They had at least so much doubt as to the validity of the claim as to be unwilling to pay it without a judgment, and yet, when the claim had been rejected and referred, they not only made no defense, but actually refrained from laying the true facts concerning the transaction before the referee. Under these circumstances we are unable to see that they used any degree of prudence or diligence whatever in defending the estate, cer-

tainly not such as any prudent man would exercise if such a claim were made against him personally. Under the facts as they now appear, which differ materially from those which were shown upon the former appeal, we are of opinion that the referee was right in surcharging the executors' accounts with the amount paid to Mrs. Corbit in satisfaction of her judgment. With respect to the other items called into question, viz., the interest paid on mortgages and the commission charged by the executors, we also agree with the learned referee.

The decree is therefore affirmed, with costs to the respondents.

CLARKE and HOUGHTON, JJ., concur.

O'BRIEN, P. J. The main question to be determined upon this appeal is whether the accounts of the executors should be surcharged with the judgment for $10,423.55 recovered by the widow of the testator. Upon the former appeal the finding of the referee was that the said $6,000 never passed from her hands into those of the testator; that there is no competent or sufficient proof of the payment of the $3,000 to the testator. Upon this new trial, however, the learned referee found that she paid over the $3,000 to the testator in the month of January, 1896, and that her farm at Oak Tree was paid to Ritzmann as $6,000 of the purchase price of No. 106 Eighth avenue. His conclusion of law, however, notwithstanding this finding, was that the judgment obtained upon the claim "was obtained by the negligence or 'collusion of the executors and affords no' justification or legal defense to the payment thereof by them"; and also that the claim "was not a legal and valid claim against the estate of her husband, Joseph Corbit." While the referee does not specifically find the fact or state the conclusion, it is sufficiently apparent from the reading of his decision that because the opposition to the claim on the reference to prove it was merely formal, and because the executors neglected to bring out fully all the facts with reference to the real estate transactions between the widow and her husband he finds the executors guilty of negligence or collusion, and upon all the facts as now appearing he concluded against the existence or validity of that claim. This charge of negligence or collusion based on the failure to more strenuously oppose the claim, or in not bringing out more fully the facts about the real estate transactions, is susceptible of explanation by the fact, fairly to be inferred, that with full knowledge of all the facts the executors believed the claim to be just and that it should be paid. Possibly their actions in consenting to a reference and not then aggressively fighting the claim will prevent their getting any benefit from the judgment which they paid. But we can look at the question as though the claim had been paid on presentation, without a reference.

The referee arrived at his decision, not because the widow had not given to her husband for investment, just as she claimed, the $9,000, but because as the result of the transactions in the exchange of properties by which she finally obtained the legal title to the Ninetieth street house she had been paid and her claim satisfied, and therefore there was nothing due her from her husband at the time of his death. He

decides that although she gave her husband $9,000, and although all she ever actually received back in money was the $171.21, which resulted from the sale of the property at No. 172 East Ninetieth street, which stood in her name, the acceptance by her of the $171.21 resulted legally in the discharge and payment of her claim. As to the correctness of this conclusion a brief reference to the evidence is profitable, especially for the light it throws upon the question of the good faith of the executors and the problem which confronted them. When the widow presented her claim, she was dissatisfied with the provision made for her in the will and has expressed an intention of contesting it unless she received back $7,500 of the $9,000, which she claimed her husband had received from her. It may be that had she, in an action for an accounting during the lifetime of her husband or in an action for money had and received, sought to recover back the $9,000, she would have been defeated upon the ground that legally there had been an adjustment and settlement of the claim, and that her dealings with her husband were such that whatever the result may have been in loss to her she could not establish her claim. We cannot, however, overlook the fact that these were not transactions between people who were dealing at arms' length, but were between husband and wife—transactions in which trust and confidence was reposed in the husband, and in which, as shown, his business judgment determined the investments into which their joint property was invested. There is no evidence that she ever formally assented to any arrangement by which she released the claim which she subsequently asserted to be reimbursed and have returned to her the money and the value of the farm which she had subjected to the control and disposition of her husband. In the will the testator does say that he conveyed the Ninetieth street property to his wife; "it being my intention at the time to give said property unto her in the place and stead of her farm at Oak Tree, New Jersey, which was sold by her and the proceeds in part used in the purchase of said last named real estate." This, however, is neither binding nor conclusive on the wife, and regardless of his intention she had the right to retain this property as security or for what it was worth and for the balance look to her husband for payment.

It may be, however, that, notwithstanding their relation as husband and wife, the effect of her conduct in permitting the money and property to go first into a leasehold and subsequently into the two Ninetieth street houses, one of which was placed in her name, resulted legally in a discharge and satisfaction of her claim. This, however, would not necessarily be conclusive upon the question of the executors' liability, because, in making the payment, they may have acted in good faith, believing the claim to be just, and in the exercise of reasonable diligence and prudence. We say this would not be conclusive because the rule has never been so rigidly applied as to hold an executor to be an insurer of the validity of every claim presented against an estate and paid by him. The general rule undoubtedly is that, if an executor or administrator assumes to pay a demand which has no legal foundation and could not have been recovered, the claim may properly be disallowed on his accounting. Dye v. Kerr, 15 Barb. (N. Y.) 444. And, if

he negligently allows an invalid claim to go to judgment without employing counsel to attend the trial or take an appeal, he may be charged with the amount paid on the judgment. Matter of Saunders (Surr.) 23 N. Y. Supp. 829, 4 Misc. Rep. 28. This general rule of liability, it will be noticed, involves the element of negligence or bad faith as the basis of the rule, and in defending the estate against the payment of unjust claims or in collecting the assets of the estate he is held to that degree of diligence, intelligence, and care which an ordinarily prudent man should observe in the conduct of his own affairs.

While we have not found a case directly affecting the payment of claims, the rule as to the obligation which rests upon the executors, we take it, is the same, whether applied to payments out of the estate's money or in seeing to it that the property belonging to the estate is collected and held for those entitled to it. As to the duty resting upon an executor or administrator in the latter contingency, we have the rule thus stated in McCabe v. Fowler, 84 N. Y. 318, where it was sought to hold an executor for bonds which he should have reduced to possession:

"An executor or trustee is not a guarantor for the safety of the securities which are committed to his charge, and does not warrant such safety under any and all circumstances, and against all contingencies, accidents, or misfortunes. The true rule which should govern his conduct is that he is bound to employ such prudence and such diligence in the care and management of the estate or property as in general prudent men of discretion and intelligence employ in their own like affairs. King v. Talbot, 40 N. Y. 76."

And in Hollister v. Burritt, 14 Hun (N. Y.) 293, it was said:

"Certainly an executor or administrator cannot complain if he is held to that amount of care and diligence in the management of an estate committed to him as a reasonably prudent person would employ in the management of his own affairs."

As already said, the charge of negligence and collusion rests upon the failure of the executors to strenuously contest the claim upon the reference, and for failure to bring out all the facts as to the real estate transactions between the testator and his widow. We must assume that they are chargeable with such knowledge as inquiry and diligence would have elicited, and in the light of such knowledge we are to determine whether or not they were guilty of bad faith, negligence, or collusion in paying the claim. When the widow's claim was presented, so far as appears in good faith on her part, the executor Watson knew, without the necessity of inquiry, all the facts, that she had given to her husband in cash and property the equivalent of $9,000, and that as the result of their dealings she had received back but $171.23; and he also knew that she had threatened to contest the will unless the claim was paid. The responsibility as to what disposition to make of the claim rested upon him. Not wishing in the first instance to pay it, he rejected it, with the understanding, undoubtedly, that it should be referred, and upon it being supported before a referee that it should be paid. It is not claimed that he was responsible for the presentation of the claim, nor can we find evidence to support the view that there was any collusion by way of instigating the presentation of the claim or advising its being pressed against the estate. All

that we have as bearing upon that subject, as well as supporting the charge of negligence, is in the failure to bring out in detail all the facts as to the dealings between the widow and her husband, and in not maintaining that the result of her finally accepting the Ninetieth street property was a release and extinguishment of her claim. It may be that such would be the legal effect of her accepting the Ninetieth street property, but this we do not decide, preferring to rest our decision upon the view that, whether he was legally right or not in his conclusion that the claim was still valid and subsisting, he should not, because mistaken upon a question of law, be mulcted with a judgment which, in one view of the evidence, we think was paid in good faith. In paying this claim the executors in no way profited, and the estate was benefited to the extent at least of averting a threatened contest of the will; and, while we do not go so far as to hold that an argument could not be supported as against the executors, we are still of opinion that the evidence does not support the conclusion that the executors were guilty of negligence or collusion.

As said in our former opinion (Matter of Watson, 101 App. Div. 551, 92 N. Y. Supp. 195):

"The rule is settled that where inferences are equally consistent with innocence or guilt, equally consistent with good faith or bad, or equally consistent with the view that one upon whom a duty is placed has or has not performed it, we are required to draw those inferences which are consistent with innocence, with good faith, with diligence and performance of duty, rather than the opposing inferences. I think that, without doing violence to any of the inferences that should fairly be drawn from the facts surrounding the obtaining and paying of the judgment by the executors, an argument could be built up in support of the view, equally as cogent and logical as that presented against it, that, so far as the executors are concerned, there is no reason for holding that by any collusion with the widow or through any fraud upon the estate of which they are trustees they entered into any arrangement or were guilty of bad faith or were negligent in permitting the judgment to be obtained. It must be conceded that there was a question as to whether the widow had or had not a valid claim against the estate. She had asserted it and was engaged in pressing it, and, in addition, she had a right and had shown an inclination to contest the validity of the will itself. The executor Watson, who had been the private secretary and business manager of the testator, and who was entirely familiar with the merits of the claim, as well as with what were the chances of success had the widow contested the will, is not to be charged with bad faith or want of diligence, if, in his best judgment, he concluded that it would be better to avoid the contest of the will and pay the claim of the widow if it could be established."

This opinion rendered on the former appeal must be regarded, so far as applicable, as the law of this case, and we think that, if it had been applied to the facts which were established by the findings of the referee and which in all things support the claim of the widow as to the payment of the money and delivery of the property to the husband, it would relieve the executors of the charge of negligence or collusion in not having more stubbornly contested the claim. What we therein said we again repeat, that "it would seem to be a harsh and unjust rule to apply or surcharge the executors with this judgment. It is only, as said, by resolving against the appellants' inferences, equally as consistent with their good faith and honesty as with bad faith and fraud, that the conclusion can be reached that the claim

of the widow, which was reduced to judgment and which was admittedly paid by the executors, is not a proper credit to allow them." In reaching this conclusion, we have not overlooked the finding of the referee based upon the devise in the testator's will to his wife, which he found to be a devise "in lieu of dower, thirds and quarantine." As correctly contended by appellant and supported by the cases referred to on the brief, "a devise or bequest in lieu of dower, thirds, and quarantine is not a devise in lieu of debts. In order to raise a case for an election under a will, a clear and decisive intention of the testator must be manifested by the will itself, to dispose unconditionally of that which did not belong to him. If his expressions will admit of being restricted to some interest in property belonging to or disposable by the testator, they will not be held to apply to that over which he had no disposing power."

With respect to the other items, for interest paid on mortgages and the question of the amount of commissions due the executors, we agree with the learned referee and think that his conclusions are right. The principal item, however, which we have referred to, namely, the payment of the judgment recovered by the widow, we think the referee erred in disallowing and his conclusion upon this item should be reversed and the claim allowed.

The decree should accordingly be modified by allowing the executors the amount paid on such judgment, and, as so modified, the decree should be affirmed without costs.

INGRAHAM, J., concurs.

INGRAHAM, J. I concur with the Presiding Justice. The referee has found that prior to the death of the testator the widow paid to him $3,000 in cash and transferred a farm which was accepted at $6,000 for the purchase price of certain property in the city of New York. Of these facts one of executors had full knowledge. When, after the death of the testator, his widow presented a claim for this $9,000 against the estate, if he in good faith believed the claim to be a valid claim, he was justified in paying it. I think the effect of the evidence is that the executor Watson in good faith believed that this claim was a valid claim, and that the widow was entitled to recover the money and property that she had delivered to the testator and which he had used in the purchase of the property. He required, however, the claimant to establish the claim by a judicial proceeding against the estate; but, if he in good faith believed the claim to be a valid one, he was not bound to put the estate to the expense of the strenuous litigation in opposition to it, and, the plaintiff having proved her claim to the satisfaction of the referee before whom the claim was brought, I do not think he should be charged with the amount of the judgment that the claimant obtained and which was subsequently paid by the executor. In view of the fact that money and property had been used by the testator, whether or not the transfer by the testator of the fee certain property to the widow was a satisfaction of that claim was a question of doubt that a layman might well believe would not be an answer to the claim.

It seems to me that, the moment the fact is proved that the claimant actually transferred money and property to the testator to the amount of her claim, and that the claim is therefore based upon an actual payment of the money and property to the testator, to justify the surrogate in charging the testator with the amount of the judgment, it was necessary to establish affirmatively fraud or collusion, which, it seems to me, this evidence fails to establish.

O'BRIEN, P. J., concurs.