In the Matter of the Judicial Settlement of the Account of MATTHEW W. OTIS, as Executor, etc., of EDWARD L. PEARSE, Deceased, Respondent.

JESSIE E. BEERS and Another, Appellants.

Third Department, July 2, 1926.

**Executors and administrators — accounting — claims against estate — executor should have been surcharged with amount paid his wife on claim by her against testator, her father, for wages — objectants who were required to use claimant and executor as witnesses not bound by answers — claim was not established.**

The action of the surrogate in not surcharging the account of the executor with the amount of money paid to his wife on a claim by her for wages for services rendered the testator, her father, was improper, for under the evidence the claim was not established by that degree of proof essential in a case of this kind.

The objectants were required in order to prove their case to use the claimant and the executor as witnesses but they were not, under the circumstances, bound by their answers.

APPEAL by Jessie E. Beers and another from a decree and order of the Surrogate's Court of the county of Franklin, entered in the office of said Surrogate's Court on the 26th day of October, 1925, dismissing certain objections to the executor's account.

*William S. Beers* [*Charles H. Merriam*, attorney for Esther Mumford], for the appellants.

*F. Ferris Hewitt*, for the respondent.

McCANN, J. Edward L. Pearse died on November 16, 1923, leaving a will dated August 3, 1923, which was duly admitted to probate and which gave the income of all his property to his wife, Alma Pearse, for life and after her death to Clara P. Otis, his legally adopted daughter, and her husband, Matthew W. Otis, one of the executors, $1,000 each. He then made several pecuniary legacies and gave the residue to Jessie E. Beers, Esther Mumford, Mrs. J. C. Thomas and Clara P. Otis share and share alike. He appointed his wife and Matthew W. Otis as executors. His widow, Alma

Pearse, died on March 6, 1924, and the surviving executor, Otis, filed a petition and account of his proceedings on October 16, 1924. Objections were filed by the legatees Mumford and Beers. Two objections were raised: (1) Asking that the executor be surcharged with the sale of certain Adirondack National Bank stock made by the executor Otis to himself. This objection was sustained by the surrogate and the said executor ordered to reconvey the property to the estate and sell the same at public sale; (2) objection to the payment of the claim of Clara P. Otis for $4,449.17 for alleged services rendered by her to the testator, which claim it was contended was improperly and collusively paid by her husband, the executor, to Clara P. Otis and which was also barred by the Statute of Limitations. The contestants ask that the account be surcharged with the amount of the claim of Clara P. Otis which was paid to her. The objections were overruled and the claim allowed as stated in the account. The claim of the executor's wife purports to be due for " wages " from May 1, 1908, to March 3, 1921, aggregating $5,990, upon which $1,440 was paid on account, leaving the balance, with interest, $4,449.17. This claim was paid by the executor to his wife by transferring to her a $3,000 mortgage owned by the estate and the balance paid either in cash or by check. It was paid during the lifetime of the widow and coexecutrix. In view of the peculiar circumstances of the case it was necessary that the contestants call the executor and also the original claimant in explanation of the transaction. The executor testified that the original claim of his wife was presented to him and paid by him; that the bill ran only until the date of the marriage of Clara P. Otis, claimant, and himself, to wit, March, 1921; that he inquired of his mother-in-law, his coexecutrix, with reference to the bill before paying the same and he offered in evidence an instrument signed by her, which was witnessed by Seaver A. Miller, and was attached to the original claim, which reads as follows:

" I, Alma Pearse of the Village of Saranac Lake, N. Y., and one of the executors under the last will and testament of Edward L. Pearse, deceased, do hereby certify that the annexed bill of Clara P. Otis is proper, reasonable and correct, and that it was understood that if the said Clara P. Pearse should remain with the deceased during the times set forth in her statement she would be paid for her services, as she wanted to live away from home and work.

" (Signed)   ALMA PEARSE.

" Witness

" SEAVER A. MILLER."

The contestants objected to the reception of this statement in evidence but the surrogate properly ruled that it was admissible.

The contestants were seriously handicapped in endeavoring to show the invalidity of the claim by being compelled to produce on the trial the original claimant and the person whom it was sought to surcharge (her husband), but such was the requirement of the rules of evidence that undoubtedly it would have been impossible for the contestants to have made any progress in establishing the negligence or irregularity of the executor without showing the whole transaction. This procedure, however, did not make them the witnesses of the contestants to the extent that they were bound by their answers. Mrs. Otis testified that on May 1, 1908, she had a conversation with her father, which was the result of an argument about a wedding present which she wished to purchase for a friend, her father objecting thereto. She said that she would not stay at home unless he paid her; that she had a future to look out for, and that she agreed to work for him for ten dollars a week from then on, all the time she stayed home, as her " allowance." She also testified that this payment was for " wages." The distinction between " wages " and " allowance " is very important. The collection of the latter cannot be enforced, but the former might if a contract were properly established. There is no testimony to show what if any services she rendered. It appeared that she was at home part of the time and part of the time she was away either at work or at school and that the latter covers periods which purport to be covered in the itemized account presented. She testified that she kept a memorandum in a book or " diary," but that she did not have it with her and it was not produced even to refresh her recollection. She said it was " at home." She also testified that the itemized account was made up from her father's check books, showing the dates on which he gave her money, when she left home and when she returned. Some of these checks were produced but the stubs upon which memoranda was kept were not produced. She testified that all the money he ever gave her on account was by check. The handwriting on the checks which were produced was proved by her. She swore that the first check was dated May 1, 1908, whereas it appears that the first check given her was dated September 14, 1908. It does not appear how old she was when the alleged contract was made. It does appear, however, that she was away at school for years thereafter, up to and including the year 1913, and that in 1914 and 1915 she was engaged in " war work." No credit is given for this time, but full time is charged for both of those years. She further testified that she often came home from school when sent for and that during all these times she was getting her board and clothing. The checks were not given regularly and were not always of the same amount

nor always given to her. One check was given to pay off a $200 note which was her personal obligation. Checks were also made out for other people and credited on her account. The only testimony that any of the checks received in evidence were paid on account of services rendered by her was given by her.

We are satisfied that this claim has not been satisfactorily established, furthermore that the executor has negligently allowed it and that the payment thereof was by collusion. This claim was not listed in the inventory made by the executor at the time of the death of Edward L. Pearse. On the trial the executor could at least have presented the check books or required the presentation of her memorandum book or "diary," both of which were "at home." He could have established her father's handwriting by some one other than the claimant. He could have required proof of some act of service rendered (if any there was) as the consideration for the contract made when claimant was apparently but a child. It is difficult to determine from the testimony exactly what period was covered by her school attendance, but as near as it can be figured, she was in school when the alleged contract was made, to wit, in 1908, and from then until 1913; as above referred to she worked during 1914 and 1915 in "war work" and she was married to the executor Otis in 1921. The very fact that the testimony is so unsatisfactory that this cannot be figured, is proof in itself that the claim was not satisfactorily proved. Another fact which is unexplained is that no charge was made for services after the date of her marriage to Otis, whereas for some years thereafter she lived with her husband in her father's home. Claimant was unquestionably a hostile witness. Her interests were adverse to those of the contestants. She had received her money and it was natural that she should protect her husband from being surcharged, but in establishing this claim the contestants were compelled to overlook long-established rules of evidence, which rules were recklessly violated and ignored.

It is well established that "claims withheld during the life of an alleged debtor and sought to be enforced after his death, are always to be carefully scrutinized and only admitted upon satisfactory proof." (Kearney v. McKeon, 85 N. Y. 136.)

That is the condition that exists here. Another feeble bit of testimony is that offered by the claimant that during his last illness the testator "asked me for his check book and pen" that he might "settle up with me." This was the day before he lapsed into unconsciousness and at that time he only had $1,900 in the bank with which to pay the claim presented amounting to nearly $4,500. A nurse was produced who testified that while she was attending him he

asked Mrs. Otis to " get the check book and he would settle up." No explanation is given as to what settlement was to be made or what the check was to be drawn for. There is no reference or suggestion as to the subject which Mr. Pearse and Mrs. Otis were discussing at that time. The same argument is applicable to the testimony of Miss Stainback produced to show that testator offered to pay her twenty dollars for staying at this house two weeks, saying " that it was the amount he would pay Clara if she were at home."

These are some of the facts which are not satisfactorily explained. We might also add that it is unexplained why this account should have been permitted to run by the testator up until the date of his death, when the testimony shows that he was abundantly able to pay any of his obligations at any time. It is also suggested that no effort was made by the executor to raise the point or establish the fact that the Statute of Limitations operated against this claim. We do not pass upon the sufficiency of such a defense if presented, because we believe that no claim has been satisfactorily established, but at least it was the duty of the executor to raise the proposition and have the facts thoroughly presented.

In the language of the contestants' brief: " The allowance and payment of the claim are simply *prima facie* evidence of its validity which may be overcome by evidence showing its doubtful character. That this proposition is sound in principle seems clear on consideration of the situation presented in the case at bar and similar cases, because manifestly the executor cannot impart validity to a claim simply by paying it. * * * It is clear * * * that the evidence in this proceeding would not have sustained the claim had it been rejected by the executor and claimant put to her proof."

We do not regard it as necessary to cite a number of authorities to sustain a reversal of this decree. The law on the proposition is well settled. In this case it is to a great extent a question of the credibility of witnesses, uncontradicted because of the inability to produce any evidence to contradict them, but it is also a question of sufficiency of proof produced when better proof was available and it is also a question of failure of the executor to protect the estate. It is collusion. We call attention to *Matter of Dole* (168 App. Div. 254). In that case the claim of the administrator's husband was allowed and it was held that thereby its validity was established *prima facie*. The alleged contract was to pay a weekly sum for board and lodging. The court said: " Either such a contract should have been in writing, or, if based upon parol evidence, the evidence should have emanated from disinterested witnesses or have been corroborated by them in all substantial particulars. * * *

Aside from the testimony of the claimant and that of his wife who is the administrator, there is but slight proof to establish the claim. And this proof is confined substantially to the testimony of a woman with whom the intestate boarded for six weeks, about two years before her death. Her testimony is that the intestate insisted upon payment of board to her, and told her to take payment of $5 a week, ' because that was what she always paid to her daughter.' Even this bit of testimony is consistent with the · fact that the intestate had discharged any obligation to the claimant."

The opinion also comments upon the fact that credit had been extended for many years while the decedent was able to pay and had money available for such purpose, also upon the fact that no claim was presented during the lifetime of the decedent. The opinion is based upon a similar state of facts to that now before us.

There is nothing in this claim to appeal to our sense of justice. The alleged contract is contrary to that naturally expected. It is supported by very little proof and even that is not of the quality which courts require.

The decree of the surrogate should be modified and the objection to the account in so far as it applies to the allowance of the claim in question should be sustained and the decree of the surrogate, as modified, affirmed accordingly, with costs and disbursements in favor of the appellants.

All concur, H. T. KELLOGG, J., in the result.

Decree modified by striking out the allowance of the claim in question, and as so modified unanimously affirmed, with costs in favor of the appellants against the executor personally.