In the Matter of the Estate of HELEN HANRETTE, Deceased.

Surrogate's Court, Livingston County, July 20, 1931.

*Newton, O'Connor & Newton* [*Lewis C. O'Connor* of counsel], for the petitioner.

*Hubbell, Taylor, Goodwin, Nixon & Hargrave* [*W. Clyde O'Brien* of counsel], for the contestant John Hanrette.

*James E. Kelly*, for Mary E. Hanrette.

WHEELER, S. This proceeding was instituted by the administrator for the final judicial settlement of his accounts.

John E. Hanrette, a brother of the decedent, and Mary E. Hanrette, a person interested, filed objections to Schedule D of

the account whereby the administrator assumes to take credit for the payment of the sum of $1,050.46 to one Alice Hanrette, a sister of decedent, upon the ground that the payment was improperly, unlawfully, collusively and negligently paid, and asks that the administrator be surcharged with the amount of $1,050.46, and Mary E. Hanrette further objects to the failure of the administrator to recover from Alice Hanrette the amount of a so-called joint account which was in the names of Alice Hanrette and the decedent at the time of decedent's death, with the Lincoln-Alliance Bank in Rochester, N. Y., in the amount of $866.68, in the following form: "Helen Hanrette and Alice Hanrette, either or survivor may draw," and alleges that this money represented by the joint account was the separate and sole property of the decedent, and asks that the accounting administrator be charged with the amount of that joint account drawn out by the survivor, Alice Hanrette.

Charles T. Moran was appointed administrator of the estate of Helen E. Hanrette by the surrogate of Livingston county February 24, 1925, and qualified and letters are still in full force.

Notice to creditors was published, requesting presentation of claims against the estate on or before September 25, 1925.

On September 3, 1925, the claimant herein, Alice Hanrette, filed with the administrator a claim against the estate, verified on that date, demanding therein the sum of $1,050.46.

This claim was itemized and was for money alleged to have been loaned to decedent between May 15, 1922, and October 6, 1924, the total loan amounting to $925, and interest was demanded in the proof of claim, and with calculated interest, and several small items aggregating $9.66, made the total claim $1,050.46.

The record discloses that this claim was formally rejected by the administrator upon the advice of L. C. O'Connor, attorney for the administrator, and that thereafter and without the knowledge of his attorney, the rejection was withdrawn and the claim was paid on the 14th day of August, 1930.

The petition for voluntary accounting was verified April 23, 1926, and filed by the administrator April 7, 1929.

The account was not filed with the petition.

The administrator's account was filed April 12, 1931.

Upon the trial the claimant was produced by the administrator and her testimony was objected to as being incompetent under section 347 of the Civil Practice Act. This evidence was received, however, upon which decision was reserved. She thereupon testified in substance that she loaned to her sister, the decedent, between March 15, 1922, and October 6, 1924, $925 and various other items,

834

making up the amount of her claim, $1,050.46; that she kept a record of the amounts at the time the items were loaned, and she took this record up to Mr. Carpenter, the notary, and the claim was prepared as presented, and upon being interrogated as to the present existence of this record, she stated that it was either at her home or with the administrator, or with the attorney, Mr. O'Connor, and at one point in her testimony testified that she then had a book down home containing a record of some of the loans she had made to her sister.

*Neither the original memoranda nor any memoranda of these loans were produced at the hearing.*

The decedent lived partly with claimant at her home in Avon and part of the time with her brother in Rochester, and the claimant was familiar with the financial condition of the decedent, knowing that she carried deposits in substantial amounts in the State Bank of Avon, the Rochester Trust and Safe Deposit Company and the Lincoln-Alliance Bank, during all the time that the alleged loans were made.

She was familiar with the fact that her brother had always objected to the payment of her claim.

The amounts claimed as loaned were turned over to the decedent in cash, the decedent claiming that she wished to use the money and did not desire to break into the interest periods, covering the various bank accounts, as the reason for her borrowing this money.

The administrator was placed on the stand by the contestants, and testified, among other things, relative to the claim for $1,050.46, that he relied solely upon the proof of claim as filed; that he did not receive from her or was there exhibited to him any writing of any kind, signed by the decedent, showing the validity of the claim and that the loan was not evidenced by any writing of any kind; that he knew that objections had been raised to the payment of the claim; that he rejected the claim and then reconsidered and paid it August 14, 1930, without his attorney's advice; that he was warned by the attorney for the objectors, in writing, that the claim was objected to and that if the proposition made was not accepted it would be withdrawn, and, following that notification and warning, the administrator paid the account in full, and he presents on this accounting a receipt of the claimant therefor and asks that the claim as paid by him be allowed in this proceeding.

Concerning the joint bank account, the claimant testified that between March 15, 1922, and October 6, 1924, an account was opened in the Merchants Bank in Rochester in the name of " Helen Hanrette and Alice Hanrette, either or survivor may draw," on

June 3, 1924; that the initial deposit was $849.70, and to this original deposit the record discloses that both claimant and the decedent contributed, the claimant testifying that more than one-half had been contributed by her, and that the bank book was delivered to her by the administrator after the death of Helen Hanrette, and she drew this money out on May 4, 1929; and in this connection the administrator testified that on the death of Helen E. Hanrette the bank book in question came into his possession, the deposit being in the name of " Helen Hanrette and Alice Hanrette, either or survivor may draw," and that he discussed the matter with his attorney and upon his advice turned the bank book over to the survivor of the joint account, Alice Hanrette, and that he could not obtain any proof that the account did not in fact belong to her as such survivor.

Based upon this brief record, the questions involved are to be decided.

It seems proper at the outset to dispose of the reserved ruling as to the admissibility of the testimony of the claimant, Alice Hanrette, which was objected to as incompetent under section 347 of the Civil Practice Act.

There are many authorities to the effect that when a claim has been paid and allowed, as in this case, on an accounting by the administrator the claimant is competent to testify as to personal transactions with deceased.

In support of the claim, *Matter of Frazer* (92 N. Y. 239); *Matter of Lese* (176 App. Div. 744); *Matter of Swiller* (205 id. 302); *Matter of McNeany* (5 id. 456) have been cited, and while this holding has been criticised, it has nevertheless been followed. (*Matter of Mulligan*, 82 Misc. 336; affd., 216 N. Y. 720.)

The rule was also followed in *Matter of Demmerle* (130 Misc. 684).

The court follows the law as established. The objections are, therefore, overruled and exception to such ruling is accorded the contestants.

The first objection of the contestants to be disposed of is that of the contestant, Mary E. Hanrette, in which she claims that the deposit in the Lincoln-Alliance Bank of Rochester, amounting to $866.68, which at the death of decedent was deposited, " Alice Hanrette and Helen Hanrette, either or survivor may draw," was the sole and separate property of the decedent, and asks that the administrator be charged in his account with this deposit.

Section 148 of the Banking Law applicable to banks, provides: " When a deposit shall have been made by any person in the name of such depositor and another person and in form to be paid to either, or the survivor of them, such deposit thereupon and

any additions thereto made, by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them; and such payment and the receipt or acquittance of the one to whom such payment is made, shall be a valid and sufficient release and discharge to said bank, for all payments made on account of such deposit prior to the receipt by said bank of notice in writing signed by any one of such joint tenants, not to pay such deposit in accordance with the terms thereof."

The deposit in this case complies with the statutory form. The record is barren of any facts or circumstances whatsoever explaining or tending to show that the title as joint owners was not intended with right of survivorship.

In *Clary* v. *Fitzgerald* (155 App. Div. 659; affd., without opinion, 213 N. Y. 696), Judge Robson, in a case parallel with the instant case, in the course of his opinion, said: "We conclude, therefore, that the deposit in the bank of the fund in the form in which it was made [' Dr. Onondaga Savings Bank, to Mrs. Kate Connelly or Mrs. Kate A. Fitzgerald, either or survivor, may draw. Cr. May 23, $1,478.71 '] was sufficient in the first instance to establish in this action a joint ownership in the fund with the attendant *right of survivorship* therein, and that no evidence of a contrary intention was presented by plaintiff."

In *Havens* v. *Havens* (126 Misc. 155) the court fully discusses the law applicable to joint bank accounts, and reaffirms the rule that when deposits which read, " either or survivor to draw," being in statutory form, " there was presumption of joint ownership, with rights of survivorship and the burden of proving the contrary was on the adverse party." This case gave a full and complete discussion of the law applicable to joint accounts and cites the statute and many authorities in support of the above rule.

It, therefore, follows that the claim of the contestant is disallowed and that decree may so provide.

The remaining question relates to the payment of the claim of Alice Hanrette by the administrator, as to which the contestants object and seek to surcharge his accounts in the amount paid.

The record discloses that this claim was properly verified and presented for payment and was formally rejected by the administrator upon advice of his counsel (thereby expressing the conclusion at that time that it was not a just claim against the estate). The subsequent withdrawal of this rejection and the payment of the

claim several years after its presentation without the advice of counsel; that both the administrator and the claimant prior to and at the time of the payment knew that the contestant personally and through his attorney objected to the payment of the claim as not being a just claim against the estate; that the administrator testified relative to investigation or the lack thereof made by him, upon his direct examination: " Q. Prior to paying this claim did you take any testimony from the claimant, Alice Hanrette, as to the nature of the claim or the manner in which it occurred — under oath? A. No sir. Q. You relied solely on the proof of claim as filed? A. Yes sir."

At a later hearing, however, the witness in response to questions from his counsel attempted to qualify by stating that he investigated " to a certain extent," and that " she told him she loaned the money; " but on direct examination he relied " solely upon the verified claim as presented."

No claim for the alleged loan was made by claimant to the decedent in her lifetime. Nothing was produced on the trial corroborative of the alleged loans. The only proof whatsoever is the testimony of the claimant, which was to the effect that at the times indicated she loaned her sister cash.

Section 210 of the Surrogate's Court Act provides:

" Effect of admission and allowance of claim or debt by representative.

" Whenever upon any accounting or judicial settlement of an account, the executor or administrator admits and allows a claim or debt against the deceased, other than his own claim, or has theretofore in writing admitted or allowed such a claim or debt, the validity of such claim or debt shall be thereby established.

" When such a claim or debt has been so admitted or allowed, or a judgment against the executor or administrator has been obtained, whether either has been paid or not, any party adversely affected thereby may file objections thereto and may show that the claim or debt was fraudulently or negligently allowed, or paid, or that the judgment was obtained by fraud, negligence or collusion.

" If the surrogate shall sustain the objections in a case where the claim or judgment has not been paid, the claim shall be deemed to be rejected by the accountant at the time of such determination."

Section 211 of the Surrogate's Court Act provides:

" Rejected claim to be tried on judicial settlement; limitation of action by creditor.

" If the executor or administrator doubts the justice or validity of any claim presented to him, he shall serve a notice in writing

upon the claimant that he rejects said claim, or some part of it, which he specifies.

"Unless the claimant shall commence an action for the recovery thereof against the executor or administrator within three months after the rejection, or, if no part of the debt is then due, within two months after a part thereof becomes due, said claimant, and all the persons claiming under him, are forever barred from maintaining such action, and in such case said claim shall be tried and determined upon the judicial settlement."

When the Code was revised in 1914 the revisers made the following note under section 210: "This new section makes the allowance of the claim of some value and fixes its standing as a valid claim unless proof is made as in a case where a judgment has been obtained." •

Thus this section provides that the allowance of a claim by the representative of an estate establishes its validity. Any person adversely affected by the allowance of a claim or debt may object to the allowance or payment on the ground of fraud, negligence or collusion on the part of the representative of the estate.

The effect of this provision may be to shift the burden of proof to the contestant and give to an admitted claim some added force over a rejected claim. Yet the claimant, I think, after due objection interposed, must establish the claim the same as a rejected claim in order to satisfy the conscience of the court in allowing it.

The law is well settled that claims against an estate must bear careful scrutiny by the courts and be allowed only when they satisfy a rigid rule of caution.

In *Matter of Watson* (115 App. Div. 310; affd., 187 N. Y. 541) there is a case similar in many respects to this case and the court in the course of its opinion said: "It is the general rule that if an executor or administrator assumes to pay a demand which has no legal foundation, and could not have been recovered, the claim may properly be disallowed upon the accounting (*Dye* v. *Kerr*, 15 Barb. 444) and if he negligently allows an invalid claim to go to judgment without making an honest contest, the judgment will afford him no shield, and he may properly be charged with this amount. (*Matter of Saunders' Estate*, 4 Misc. 28.) Of course an executor is not to be charged as an insurer of the validity of every claim which he pays * * * he must at least show that in paying the claim, as in other acts of administration, he employed such prudence and such diligence in the care and management of the estate or property as, in general, prudent men of discretion and intelligence employ in their own like affairs. (*King* v. *Talbot*, 40 N. Y. 76.)"

Again, in *Matter of Pearse* (217 App. Div. 602), an executor paid a claim; it was objected to and the contestants asked that the amount paid be surcharged to the executor. After a review of the facts, the court said: " We are satisfied that this claim has not been satisfactorily established and furthermore that the executor has negligently allowed it and that the payment thereof was by collusion."

The claimant in the case at bar was a hostile witness; her interests were adverse to those of the contestants. She had received her money and it was but natural that she should protect the administrator from being surcharged. She had withheld her claim during the lifetime of the decedent; she knew at the time the alleged loans were made that the decedent had money in several banks. There does not seem to have been any real necessity or reason for the loans.

It is well established that claims withheld during the lifetime of an alleged debtor and sought to be enforced after her death are always to be carefully scrutinized and only admitted upon satisfactory proof. (*Kearney* v. *McKeon*, 85 N. Y. 136; cited with approval in *Matter of Pearse, supra.*)

Manifestly the administrator cannot impart validity to a claim by paying it and thereby shifting the burden upon the contestants.

It is certain that the evidence in this proceeding presented to establish the claim would not have sustained the claim had it been rejected by the executor and the claimant put to her proof.

In *Matter of Taylor* (251 N. Y. 257) the court laid down the law as follows: " The duty of executors clearly does not permit them merely by allowing or paying claims against the estate without regard to their character to shift the burden of proof upon objectors. They are still bound to the exercise of proper care. They must act on satisfactory proofs that the claim is justly due. (Surrogate's Court Act, § 207.) What is satisfactory proof depends upon the nature of the claim. If its nature is equivocal or suspicious, pay ment may be withheld until the claim is tried. (Surrogate's Court Act, § 211.) * * * Reasonable diligence and intelligence on their part were called for * * *. The executors were under a duty to resist the payment of moral obligations which did not impose legal liability * * * Yet they chose to pay the note although its validity might have been litigated on the accounting without a shifting of the burden of proof under section 210 of the Surrogate's Court Act. They should have been indifferent as between the churches and the legatees."

The court further in the course of its opinion went on to state: " The executors have failed to establish their freedom from negli-

gence in paying the notes. It seems a reasonable and necessary inference from the evidence that the notes were paid without inquiry as to their true character, in order to impose the burden of proof of their invalidity upon the objectors and that counsel advised their payment to accomplish that end."

It seems to the court that the administrator in this case has failed to employ such prudence and diligence in the investigation of the claim in question as the law requires that a prudent man should exercise if a like claim had been presented against him personally.

The courts have uniformly been rigid and exacting as to the sufficiency of the evidence to establish claims against the estates of decedents, holding that such contracts are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises and in many instances the courts have gone so far as to hold that there must be evidence in writing produced upon the trial, or if ever based upon parol evidence, it should be given and corroborated in all substantial particulars by disinterested witnesses.

Here we have the testimony of the claimant against her dead sister's estate, unsupported in any particular, and the courts hold that such testimony is generally regarded as insufficient.

Public policy requires that claims against the estate of the dead should be established by very satisfactory evidence and it is the duty of the court to see to it that such estates are fairly protected against unfounded and rapacious raids. (*Matter of Van Slooten v. Wheeler*, 140 N. Y. 624.)

I, therefore, decide that the administrator has failed to establish his freedom from negligence in the payment of the claim of Alice Hanrette, in that he did not exercise that degree of care and prudence for the rights of those interested in the estate which the law requires or imposes upon administrators.

The accounting administrator will, therefore, be surcharged with the amount of the claim which he paid to Alice Hanrette, of $1,050.46.

Submit decree according to this memorandum.